IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACUMED LLC and SURGICAL RESOURCES OF PENNSYLVANIA INC. | : : : | CIVIL ACTION |
| v. | : : | |
| ADVANCED SURGICAL SERVICES, INC. and ROBERT C. MORRIS | : : | NO. 05-2711 |

FILED

MAY 1 8 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                       May 18, 2007

In five post-trial motions in this dispute between a manufacturer and one of its representatives, Defendants Advanced Surgical Services Inc. and its president, Robert C. Morris, ask this Court to reverse its rulings before and during trial, overturn the jury's verdicts, and award more than half a million dollars in attorneys' fees. Plaintiffs Acumed and Surgical Resources, the prevailing parties, ask this Court to permanently enjoin Advanced Surgical and Morris from selling its products. Advanced Surgical and Morris have failed to persuade me to reverse my decisions or the jury's verdicts, and I am persuaded Acumed needs a permanent injunction.

**FACTS**

Acumed and its authorized representative in Pennsylvania, Surgical Resources, brought a ten-count Complaint against Advanced Surgical and Morris, claiming they continued to sell Acumed's bone screws after Acumed terminated their right to do so.[1] Advanced Surgical brought a four-count

---

[1] Acumed alleged Advanced Surgical diluted its trademark under the Lanham Act, common law infringement, and Pennsylvania statutory law; breached their non-disclosure agreement, converted Adumed product, were unjustly enriched, tortiously interfered with business and contractual relationships, and intentionally misrepresented the status of Allied Surgical. The status of Allied Surgical was a matter of contention: Morris claimed Acumed knew Allied was a sham customer created for tax purposes; Acumed offered evidence it had continued collection efforts from Allied

1

Counterclaim, alleging Acumed terminated Advanced Surgical in breach of their contract,[2] failed to pay a $251,915 termination commission in the contract, violated the Pennsylvania Commissioned Sales Representative statute,[3] and, in Count IV, Acumed and Surgical Resources "converted property belonging to Advanced, defamed and disparaged Advanced maliciously and falsely, intentionally interfered with Advanced's contractual and business relationships and competed unfairly against Advanced." Countercl. at 21.

The Court narrowed Count IV of the Counterclaim after hearing three hours of argument and receiving letter briefs in lieu of motions for summary judgment, dismissing the count in so far as it alleged groundless litigation, defamation, and unlawful restraint of trade. Allegations of tortious interference with contractual and business relationships and unfair competition remained until the close of trial when I granted Surgical Resources's Motion under Rule 50(a). Advanced Surgical failed to produce admissible evidence sufficient to survive a directed verdict.

Evaluating the post-trial motions, the Court considers evidence brought out at trial regarding two contracts: the first, a contract with addenda between Acumed and Advanced Surgical's predecessor RMW, a company that included Morris.[4] Acumed produced some evidence a similar contract was mailed to Morris, but no evidence Morris signed it. That is the contract Acumed cites

---

Surgical separately from Advanced Surgical. Acumed averred it only learned during litigation Allied was wholly owned by Morris.

[2] The contract on which Advanced Surgical relies is apparently Trial Exhibit 137. Advanced Surgical's Counterclaim states the contract on which it relies is attached at Exhibit A. No contract was attached to the electronic filing; a contract, marked Exhibit A, with the referenced language was admitted at trial.

[3] Act of 1988, Dec. 21, Pub. L. 1881, No. 184, § 1 (codified at 43 P.S. § 1471).

[4] Morris was the "M" of RMW.

in its breach of contract claim. The second is one Morris testified he drafted instead and mailed to Acumed. Morris produced an undated, unverified copy of the contract, but no credible evidence it was mailed. That is the contract Morris relies on for his claim to termination payments.

The jury rejected both contract claims, finding only tort damages in favor of Acumed. The jury found against Advanced Surgical and Morris on the question of tortious interference, awarding $20,000 to Surgical Resources in compensatory damages. During deliberations, the jury asked the Court, "who determines the dollar amount of punitive damages and what percentage goes to each plaintiff." Ct. Ex. 1. On the verdict slip, the jury checked yes to the question "[d]o you find that the plaintiffs are entitled to an award of punitive damages as a result of defendants' interference with plaintiffs' contractual relations?" Verdict slip at 3.[5] The jury returned two days later and awarded $200,000 in punitive damages, 50 percent to each plaintiff. At the direction of the Court, the jury

---

[5]The jury verdict is:

**PLAINTIFFS' CLAIM FOR INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL OR BUSINESS RELATIONS WITH CUSTOMERS**

15. Do you find by a preponderance of the evidence that Advanced and/or Morris intentionally interfered with the plaintiffs' existing or prospective contractual and business relationships with plaintiffs' customers?

Yes __x__ No _____

16. If you answered "yes" to question 15, what amount of damages do you award to Acumed and to Surgical Resources?

Damages awarded to Acumed: $ __0__
Damages awarded to Surgical Resources: $ _20,000_
                Total: $ _20,000_

17. Do you find that the plaintiffs are entitled to an award of punitive damages as a result of defendants' interference with plaintiffs' contractual relations?

Yes __x__ No _____

3

also found nominal compensatory damages of $1 in favor of Acumed.

Advanced Surgical and Morris have filed five post-verdict motions; Acumed has filed one.[6] Advanced Surgical asks in two motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or in the alternative amended judgment, remittur of damages and/or a new trial pursuant to Rule 59 with respect to both the jury's verdict on liability and punitive damages. Advanced Surgical has also filed two motions seeking attorneys' fees, one under Rule 54(d) and the other under the Lanham Act. The final motion I consider from Advanced Surgical's seeks sanctions under Rule 11. Acumed's sole post-trial motion asks this Court to permanently enjoin Advanced Surgical and Morris from selling Acumed products.

## DISCUSSION

Turning first to Advanced Surgical and Morris's two motions under Rule 50(b), I find no grounds for relief. A motion under Federal Rule of Civil Procedure 50(b) is evaluated by the same standards as a motion for a new trial under Rule 59. *American Bearing Co. v. Litton Industrial Prods., Inc.*, 729 F.2d 943, 948 (3d Cir. 1984). In considering a motion under Rule 50(b), a district court must view the record as a whole, drawing "all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir. 1995). The evidence must be viewed in the light most favorable to the verdict winner. *Gay v. Petcock*, 917 F.2d 768, 771 (3d Cir. 1990). The court may not weigh the evidence or determine the credibility of the witnesses. *Reeves*, 530 U.S. at 150; *McDaniels*, 59 F.3d at 453.

---

[6]For the purposes of this Memorandum, I omit the multiple motions for leave to file which will be addressed in the Order only.

A new trial should be granted only where "the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (*en banc*)).

Under Rule 59, a party must rely on an intervening change in controlling law; previously unavailable evidence, or the need to either correct a clear error of law or prevent a manifest injustice. *North River Insurance Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Judgment as a matter of law may be entered only when there is no legally sufficient basis for a reasonable jury to have found for the nonmoving party. Fed. R. Civ. P. 50(a); *see also Reeves*, 530 U.S. at 149-50. Advanced Surgical and Morris offer no intervening change in the law, new evidence, or persuasive argument regarding manifest injustice to warrant judgment as a matter of law or a new trial.

Advanced Surgical and Morris's second motion pursuant to Rule 50(b) challenges the jury's verdict for punitive and nominal damages. The jury in this case found zero damages for Acumed, awarded punitive damages in equal shares to both plaintiffs, Acumed and Surgical Resources. An award of punitive damages requires at least nominal compensatory damages. *Smith v. Grab*, 705 A.2d 894, 901 (Pa. Super. 1997). In the face of the apparent inconsistency of the jury's verdict, the Court instructed the jury to award nominal damages to Acumed. Advanced Surgical and Morris object to this procedure.

The situation is analogous to an inconsistent verdict under Rule 49(b), in which the Court may enter judgment in accordance with the jury's answers, it may consult with the jury to resolve the conflict between the answers and the verdict, or it may order a new trial. The jurisprudence of

Rule 49(b) requires the Court to resolve the apparent inconsistency between the answers and the verdict. *Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir. 1993). In *Wilks*, the Ninth Circuit held the district court erred when it failed to reconcile zero compensatory dollars as nominal damages of one dollar. *Id.* at 416; *see also Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 723 (3d Cir. 1971) (awarding punitive damages on a six-cent nominal damage award would not have been error).

Advanced Surgical and Morris cite two Third Circuit cases decided under New Jersey law for the proposition "a plaintiff must suffer some injury in order to recover punitive damages." *Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 281 (3d Cir.1995); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1195 (3d Cir.1993). The case at hand was in court on a federal question under the Lanham Act; the question of what state's law applied did not arise. I have applied Pennsylvania law without objection. Pennsylvania law allows the molding of nominal verdicts. *Commonwealth v. Musser Forests, Inc.*, 146 A.2d 714, 720 (Pa. 1958) (holding when a legal right has been invaded, and substantial damages claimed, the extent of which cannot be ascertained with certainty, nominal damages may be recovered); *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727-28 (Pa. 1964)(directing entry of nominal damages of one dollar); *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770-71 (Pa. 2005) (holding a negligence claim may form the basis for a jury award of punitive damages if it finds the requisite state of mind).

Despite evidence that could support a compensatory damage award of $11,000 to Acumed, the jury did not so find and it is not this Court's role to go where the jury did not. I am, however, free to ask the jury to reconcile its verdicts, which I have done. *Wilks*, 5 F.3d at 415.

Advanced Surgical and Morris bring two motions for attorneys' fees, which they estimate will be $581,750. In the first claim, Advanced Surgical disingenuously claims attorneys' fees under

6

a contract it denies exists, the contract Acumed entered into with RMW, the predecessor representative in the territory. The only reference the contract contains to attorneys' fees is to enforce the Non-Disclosure Agreement at Addendum 7. In its Amended Complaint, Acumed alleged Advanced Surgical and Morris violated the Non-Disclosure Agreement of that contract. Throughout trial, Morris denied the terms of the RMW contract controlled his relationship with Acumed, preferring instead the contract he drafted. The RMW contract is governed by Oregon law, which limits attorneys' fees claims to the original parties and their assignees. *Stevens v. Foren*, 959 P.2d 1008, 1013 (Or. App. 1998) (construing Or. Rev. Stat. 20.097(1)(). Advanced Surgical is not entitled to attorneys' fees under the contract because it was neither a party to the contract, nor was it suing to enforce the Non-Disclosure addendum.

Advanced Surgical and Morris also argue they are entitled to attorneys' fees under the Lanham Act as the prevailing party because the jury did not find in Acumed's favor on its trademark dilution claim. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. The Third Circuit recently held, "we emphasize that the term 'exceptional' is not, as the plaintiff seems to suggest, a throwaway. Rather, it calls for a district court to determine whether it finds a defendant's conduct particularly culpable-enough to alter the general American rule that parties to litigation pay their own attorneys' fees." *Green v. Fornario*, No. 06-2649, 2007 WL 1322238, *1, (3d Cir. May 8, 2007). Among the factors to consider are the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation. *Modine Mfg. Co. v. Allen Group. Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Here the case was close and Plaintiffs' counsel conducted the case

with civility. I have no difficulty finding this case unexceptional and denying attorneys' fees.

Advanced Surgical and Morris ask for sanctions under Rule 11 on grounds Acumed failed to prove confusion in the marketplace; therefore, they argue, the lawsuit was frivolous. They also claim the breach of contract claim was frivolous because Acumed knew the RMW carry-over contract did not exist.[7] Advanced Surgical and Morris believe the litigation was designed to drive them out of the market by using depositions to slander them to people who would be Advanced Surgical's customers for other products.

Rule 11 authorizes the Court to impose "sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g., 'to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (quoting Fed. R. Civ. Pro. 11(b)(1)). A finding of bad faith is not necessary to impose Rule 11 sanctions. *Id.* at 1264. "The correct Rule 11 inquiry is 'whether, at the time he filed the complaint, counsel . . . could reasonably have argued in support' of his legal theory." *Pensiero v. Lingle*, 847 F.2d 90, 96 (3d Cir. 1994) (quoting *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 70 (3d Cir. 1988)).

Acumed and Surgical Resources prevailed on their tortious interference claim and their Lanham Act count survived Advanced Surgical and Morris's motion for summary judgment. A jury verdict against a claim does not prove it was frivolous. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (holding "the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute"). Acumed's Lanham Act count was not frivolous because a terminated authorized dealer may be found to infringe a trademark if it continues to sell

---

[7]This is the same contract under which Advanced Surgical claims attorneys' fees.

the product. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) (holding "unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement"). Acumed says it was not trying to put Advanced Surgical out of business, only protecting its product and trademark. I find no ground on which to impose Rule 11 sanctions against Acumed or Surgical Resources.[8]

Surgical Resources and Acumed also ask this Court for an injunction to prevent Advanced Surgical and Morris from selling any Acued product or representing they have the right to sell any Acumed product. They argue future loss of customer confidence and relationships is the type of harm not adequately remedied by money damages. This Court has "the power to enjoin related unlawful acts which may fairly be anticipated from the defendants' conduct in the past." *Southeastern Pa. Transp. Authority v. Pa. Public Utility Com''*, 210 F. Supp. 2d 689, 722 (E.D. Pa. 2002), (citing *United States v. Spectro Foods, Corp.*, 544 F.2d 1175, 1180 (3d Cir.1976), and *Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 89-91 (3d Cir. 1999) (finding, in cable theft case, no abuse of discretion in district court's broad injunction prohibiting "further cable theft")).

Where the evidence "disclosed a history of repetitive, flagrant violations, suggesting a real danger of recurrent evasions of a more carefully drawn order," a permanent injunction is appropriate. *Spectro Foods*, 544 F.2d at 1182. Acumed is entitled to an injunction if it has demonstrated a reasonable probability of success on the merits, the likelihood of irreparable harm should the Court

---

[8]Acumed asks for $11,100 in attorney fees under Rule 11(c) for having to deal with this motion because Advanced Surgical and Morris did not support their motion with any affidavits or other facts on the record. (Advanced Surgical and Morris filed a reply brief with documentation attached.) As vexatious as this litigation has been, I am reluctant to fan the flames by imposing further penalty on the losing parties and, so, will deny Acumed's request for attorney fees.

deny relief, no greater harm to Advanced Surgical if the injunction is granted, and the injunction is in the public interest. *ACLU v. Reno*, 217 F.3d 162, 172 (3d Cir. 2000). A continuing cycle of litigation has been held to be an irreparable injury not remedied by money damages alone. *SEPTA v. PUC*, 210 F. Supp. 2d at 727.

Acumed has prevailed on the merits and makes a credible argument unsafe bone screws will enter the market without an injunction. Advanced Surgical and Morris will suffer no harm from an injunction because they are not authorized to sell Acumed bone screws and have represented they have sold none since the inception of this litigation. The provenance of any product they were to sell after this trial would be suspect. The public interest is served by the use of bone screws from known and trusted sources.

Advanced Surgical and Morris argue they are entitled to sell their remaining inventory of Acumed products because the jury did not find in Acumed's favor on the trademark dilution counts. In this they err because the jury found Advanced Surgical's unauthorized sales of Acumed products constitutes tortious interference. I will order Acumed to buy back from Advanced Surgical any product in currently-usable condition for which Advanced Surgical can produce an invoice from Acumed. In addition, I will order Advanced Surgical to return to Acumed for destruction any other Acumed products in the control of Morris, Advanced Surgical, Allied Surgical, ASI, or their attorneys.[9]

An appropriate order follows.

---

[9] Allied Surgical and ASI are controlled by Morris. Morris has represented that his remaining Acumed inventory is in the possession of his attorneys.